IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN LEONARD McGHEE,

    Petitioner,

vs.

TOM L. CAREY, et al.,

    Respondents

No. CIV S-02-1972 GEB JFM P

FINDINGS AND RECOMMENDATIONS

/

    Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1999 conviction in Sacramento County Superior Court on charges of one count of robbery from a Rite-Aid drugstore (Cal Penal Code § 211); a second count of being a person previously convicted of a theft-related crime who committed petty theft (Cal. Pen. Code §§ 484 and 666) and a third count of battery against a Rite-Aid loss prevention officer (Cal. Pen. Code § 242).  (Clerk's Transcript ("CT") 151-53, 155-57.) The court found true the allegations that petitioner had suffered one prior serious felony conviction (Cal. Pen. Code § 667(a)) that was also a strike (Cal. Pen. Code §§ 667(b)-(i), 1170.12) and had served a prior prison term (Cal. Pen. Code § 667.5(b).  (CT 55-

1

58, 157; RT 83-88, 365-66.) The court also found petitioner had committed the prior theft-related crime underlying the second count. (CT 157; RT 365-66.) Petitioner was sentenced to state prison for eleven years, consisting of the middle term of three years for the robbery charge in count one, doubled by the strike to six years, and enhanced five years for the prior serious felony conviction. The court imposed but stayed a doubled middle term for count two, and a jail term for count three, and further declined to impose a one-year enhancement for the prior prison term. (CT 191; Reporter's Transcript ("RT") 414-15; Respondent's Brief, Ex. A at 1-2.) Petitioner claims he received ineffective assistance of counsel based on four grounds.

In addition to addressing the merits of petitioner's claims, respondent contends petitioner's claims herein are unexhausted. Respondent argues that petitioner has failed to state his claims with particularity in the courts below as well as in the instant petition. On July 10, 2002, the California Supreme Court, sitting en banc, denied petitioner's petition for writ of habeas corpus, citing In re Swain, 34 Cal.2d 300, 304 (1949) and In re Duvall, 9 Cal.4th 464, 474 (1995). (Answer, Ex. J.) In denying two of petitioner's habeas petitions, the Sacramento County Superior Court also found petitioner had failed to state all of his claims with particularity. (Answer, Ex. E at 1-2; Ex. F at 1-2.) The court may, however, deny a federal habeas corpus claim on the merits notwithstanding petitioner's failure to exhaust state court remedies. See 28 U.S.C. § 2254(b)(2).

### FACTS[1]

> Security personnel observed [petitioner] stuffing four $20 sweat shirts into his pants before he left the store. When they confronted him outside, he kept them momentarily at bay by threatening to stab them. They eventually subdued him, recovering the sweatshirts and finding a key chain on the ground hear him that had a small closed cuticle knife on it.

(People v. McGhee, slip op. at 2.)

---

[1] The facts are taken from the opinion of the California Court of Appeal, Third Appellate District, in People v. McGhee, No. C032342 (September 25, 2000).

ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

1 reaches a decision on the merits but provides no reasoning to support its conclusion, a federal
2 habeas court independently reviews the record to determine whether habeas corpus relief is
3 available under section 2254(d). <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).
4 II. <u>Petitioner's Ineffective Assistance of Counsel Claims</u>
5     A. <u>Standards</u>
6         The standards applicable to petitioner's federal ineffective assistance of counsel
7 claim were established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 688 (1984).
8 In order to prevail on the claim petitioner must show (1) an unreasonable error by counsel and (2)
9 prejudice flowing from that error. To satisfy the first prong, petitioner must show that,
10 considering all the circumstances, counsel's performance fell below an objective standard of
11 reasonableness. The court must determine whether in light of all the circumstances, the
12 identified acts or omissions were outside the wide range of professionally competent assistance.
13 <u>Id.</u> at 690. "Review of counsel's performance is highly deferential and there is a strong
14 presumption that counsel's conduct fell within the wide range of reasonable representation."
15 <u>United States v. Ferreira-Alameda</u>, 815 F.2d 1251, 1253 (9th Cir. 1986).
16         To meet the prejudice prong, petitioner must show that "there is a reasonable
17 probability that, but for counsel's unprofessional errors, the result of the proceeding would have
18 been different." <u>Strickland</u>, 466 U.S. at 694. A reasonable probability is "a probability sufficient
19 to undermine confidence in the outcome." <u>Id.</u> The focus of the prejudice analysis is on "whether
20 counsel's deficient performance renders the result of the trial unreliable or the proceeding
21 fundamentally unfair." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993).
22 /////
23 /////
24 /////
25 /////
26

Petitioner first claims that his trial counsel failed to file a Hitch[2] motion to ensure the allegedly stolen sweatshirts were admitted as evidence at trial. Petitioner contends the electronic surveillance tags and the size of the sweatshirts contained impeachment and exculpatory value. In his traverse, petitioner claims he told defense counsel that if there were electronic tags in the sweatshirts, it would prove they did not leave the store because the electronic alarm at the door had not sounded when he left the store. Petitioner further argues that defense counsel's failure to obtain the sweatshirts for use at trial prevented petitioner from demonstrating to the jury his inability to stuff even one sweatshirt down his pants. Petitioner contends he would also have demonstrated his inability to reach into his pants with his right hand and grab three sweatshirts in one motion and throw them to the side because his hand is too small.

The Sacramento County Superior Court found that petitioner failed to demonstrate "how preservation of the actual sweatshirts instead of a photo or substitute item, would have changed the outcome." (Answer, Ex. F at 2.) Photographs of the sweatshirts were used at trial. (RT 162; 191; Traverse, Ex. E.)

Jason Jauregui and Todd Jordan, both Loss Prevention Officers at Rite-Aid, testified that they saw petitioner take four sweatshirts from Rite-Aid and place them inside the front part of his pants and exit the store without paying. (RT 119-21; 133; 149; 161; 168; 174-76.) Jauregui further testified that he saw petitioner remove the electronic surveillance tags from

---

[2] People v. Hitch, 12 Cal.3d 641 (1974) (overruled on other grounds by California v. Trombetta, 467 U.S. 479 (1984), which required the government to show that it promulgated, enforced, and attempted in good faith to follow rigorous and systematic procedures designed to preserve all discoverable evidence). "The Hitch standard is no longer applicable as it has been effectively overruled by the combined effect of California v. Trombetta (1984) 467 U.S. 479 . . . and section 28(d). (See People v. Tierce (1985) 165 Cal.App.3d 256, 262-263, 211 Cal.Rptr. 325; also Preservation of Material Evidence in California: Does Hitch Survive Trombetta? (1985) 13 Hastings Const.L.Q. 147, 165-169.)" People v. Kimble, 201 Cal.App.3d 726, 248 Cal.Rptr. 41 (1988). More recently, in Arizona v. Youngblood, 488 U.S. 51, 58 (1988), the United States Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id.

the sweatshirts. (RT 120.) Both Jauregui and Jordan testified that, once outside the store, they saw petitioner remove three sweatshirts from inside the front of his pants. (RT 136; 141; 184-85.) Casey Gordon, Rite-Aid Assistant Manager, testified that he also saw petitioner reach into his pants and saw "three sweat shirts come flying out towards the security officers." (RT 212.) Jauregui testified the fourth sweatshirt was found in petitioner's pants. (RT 141.) Jordan testified that the fourth sweatshirt was hanging out of petitioner's pants. (RT 190.) Gordon testified that the fourth sweatshirt was under petitioner as he laid on the ground. (RT 219.)

      As noted in footnote 2 above, Hitch had been effectively overturned long before the date of the offense or petitioner's trial, so trial counsel was not ineffective for failing to bring a motion based on Hitch. Petitioner has not demonstrated what motion defense counsel should have brought that would have changed the outcome of petitioner's trial. In light of the unwavering eyewitness testimony of the three eyewitnesses, petitioner cannot show that but for the failure of defense counsel to ensure the presence of the actual four sweatshirts at trial, the outcome of his trial would have been different.

      Petitioner's second claim is that defense counsel was ineffective because he failed to conduct his own investigation into the missing Rite-Aid surveillance tapes of November 27, 1998. However, a review of the trial testimony reflects that both Jordan and Jauregui testified that the videotape was not running that day. (RT 114; 193.) Defense counsel cannot be held ineffective for failing to seek the production of tapes that do not exist. This claim must also fail.

      Petitioner alleges in his third claim that defense counsel was ineffective because he failed to interview two eyewitnesses: one who made the 9-1-1 call to police about the confrontation and the other witness who held the door while petitioner was escorted to the back of the store. Petitioner raises general speculation that these witnesses might have corroborated petitioner's side of the story, claiming these witnesses "could [have] raised a lot of suspicion about the D.A.'s case and the outcome of my trial." (Traverse at 10.) However, speculation is insufficient. Petitioner has provided no declarations or affidavits from these witnesses as to what

their testimony would have been.  Thus, petitioner has failed to demonstrate that defense counsel was ineffective for failing to interview them.

Finally, petitioner alleges in his fourth claim that defense counsel was ineffective because he refused to interview Kevin Talley, an ex-Rite-Aid Loss Prevention Officer, because of Talley's "run-ins with the law."  (Petition at attachment 1.)  Petitioner states he told defense counsel that Talley was ready and willing to testify that there was no way the Loss Prevention Officers could render the surveillance system inoperable and that this would prove there were videotapes in existence from the day in question.  However, petitioner has failed to provide a declaration or affidavit from Talley attesting to what Talley would have testified to and whether Talley had sufficient knowledge of the surveillance system as it was set up and maintained on the day in question at that particular Rite-Aid store.  Petitioner's self-serving statements as to what Talley might have said in court are insufficient to demonstrate relevance herein.  Moreover, if Talley's credibility could have been questioned on the stand based on his prior "run-ins with the law," defense counsel would not be viewed as ineffective for failing to call him to the stand, particularly in light of the eyewitness statements of Jauregui and Jordan that the videotape equipment was not running on that day.

At bottom, however, petitioner has failed to demonstrate Strickland prejudice on any of his claims.  If defense counsel had taken the steps petitioner claims he should have,  the outcome of petitioner's trial would not have been different.  There was strong eyewitness testimony.  Petitioner has provided no evidence that the state court's findings that he had failed to meet the prejudice prong of Strickland was contrary to, or involved an unreasonable application of, clearly established Federal law.  Indeed, each state court appropriately applied <u>Strickland</u>.  Petitioner's application should be denied.

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

/////

1    These findings and recommendations are submitted to the United States District
2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen**
3 days after being served with these findings and recommendations, any party may file written
4 objections with the court and serve a copy on all parties.  Such a document should be captioned
5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6 shall be served and filed within ten days after service of the objections.  The parties are advised
7 that failure to file objections within the specified time may waive the right to appeal the District
8 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
9 DATED: December 20, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

1
mcgh1972.157